IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| CLIFTON W. JENKINS, | ) | |
| | ) | No. 4:18-cv-2240-DCN-TER |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| ANDREW SAUL, Acting Commissioner of Social Security,[1] | ) ) ) | |
| Defendant. | ) ) | |

This matter is before the court on Magistrate Judge Thomas E. Rogers, III's Report and Recommendation ("R&R") that the court affirm Acting Commissioner of Social Security Andrew Saul's (the "Commissioner") decision denying Clifton Jenkins's ("Jenkins") application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). Jenkins filed an objection to the R&R. For the reasons set forth below, the court adopts the R&R and affirms the decision of the Commissioner.

## I. BACKGROUND

**A. Procedural History**

Jenkins filed an application for DIB on April 19, 2012, alleged a disability onset date of January 22, 2011. The Social Security Administration ("the Agency") denied Jenkins's application both initially and on reconsideration. Jenkins requested a hearing before an administrative law judge ("ALJ"), and ALJ Ronald Sweeda presided over a hearing held on October 23, 2013. In a decision issued on November 20, 2013 (the

---

[1] Andrew Saul is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is automatically substituted for Nancy A. Berryhill, former Commissioner, as the defendant in this lawsuit.

"2013 ALJ Decision"), the ALJ determined that Jenkins was not disabled within the meaning of the Act. Specifically, the ALJ determined that Jenkins had the residual function capacity to perform "light work as defined in 20 C.F.R. § 404.1567." Tr. 23. In so finding, the ALJ accorded "little weight" to the opinion of Jenkins's treating physician, Dr. Kenneth Jones, because Dr. Jones only treated Jenkins on three occasions, his opinion was "unsupported by any objective findings", and Dr. Jones did not cite any medical findings in his opinion. Tr. 26. Jenkins requested Appeals Council review of the 2013 ALJ Decision, and on February 12, 2015, the Appeals Council denied further review, making the 2013 ALJ Decision the final decision of the Commissioner.

Jenkins filed his first action seeking review of the 2013 ALJ Decision with this court on April 17, 2015. See Jenkins v. Commissioner of the Social Security Administration, 4:15-cv-01684-DCN. That action was assigned to Magistrate Judge Rogers, who issued an R&R recommending that this court reverse the decision of the Commissioner and remand the matter based on the ALJ's violation of the "treating physician rule." Tr. 415–37 (the "2016 R&R"). Specifically, the 2016 R&R noted that the ALJ's conclusion that Dr. Jones's opinion was "unsupported by any objective medical findings" was in error because Jenkins's lumbar spine x-rays, which were taken in March 2013, were consistent with Dr. Jones's opinion. Tr. 432–33. Therefore, the 2016 R&R recommended remand with instruction that the ALJ weigh Dr. Jones's opinion "in light of his examining history and the results of the objective testing that [were] not discussed by the ALJ" and "in accord[ance] with the Treating Physician Rule[] under the § 404.1527(c) standards." Tr. 435.

On July 14, 2016, this court adopted the R&R as an order of the court (the "2016 Court Order"), reversed the decision of the Commissioner, and remanded the matter to the Commissioner for further administrative action consistent with its order. 4:15-cv-01684-DCN at ECF No. 32. On February 28, 2017, in accordance with the 2016 Court Order, the Appeals Council vacated the decision of the Commissioner and remanded the matter back to the same ALJ, Ronald Sweeda. The ALJ presided over a second hearing on June 23, 2017. In a decision issued on September 25th, 2017, the ALJ again determined that Jenkins was not disabled (the "2017 ALJ Decision"). Jenkins requested review of the 2017 ALJ Decision and on June 13, 2018, the Appeals Council declined to exercise jurisdiction, making the 2017 ALJ Decision the final decision of the Commissioner.

Jenkins filed his second complaint seeking review of the 2017 ALJ Decision in the district court on August 14, 2018. ECF No. 1. The magistrate judge issued an R&R on January 29, 2020 (the "2020 R&R"), recommending that this court affirm the 2017 ALJ Decision. ECF No. 28. Jenkins filed an objection to the R&R on February 12, 2020, ECF No. 30, and the Commissioner filed a response on February 26, 2020, ECF No. 33. Thus, this matter is fully briefed and ripe for the court's review.

**B. Medical History**

The parties are familiar with Jenkins's medical history, the facts of which are ably recited by both the 2016 and 2020 R&Rs. Therefore, the court dispenses with a lengthy recitation thereof and instead briefly recounts those facts material to its review of Jenkins's objections to the R&R. Jenkins alleges a disability onset date of January 11, 2011, at which time he was sixty-two. Jenkins date of last insured ("DIL") is March 31,

2012. Jenkins has alleged that he struggles with back and spine problems, breathing issues, high blood pressure, high cholesterol, strokes, and hearth problems. Jenkins has past relevant work as a car salesman and a long-distance truck driver. He stopped work as a car salesman after finding it too difficult to walk at the speed the job required. Jenkins ceased work as a long-distance truck driver after he failed the physical examination necessary to renew his commercial driver's license.

### C. The ALJ's Decision

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. The Social Security regulations establish a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. Under this process, the ALJ must determine whether the claimant: (1) is currently engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an impairment contained in 20 C.F.R. § 404, Subpt. P, App'x 1, which warrants a finding of disability without considering vocational factors; (4) if not, whether the claimant has an impairment which prevents him or her from performing past relevant work; and (5) if so, whether the claimant is able to perform other work considering both his or her remaining physical and mental capacities (defined by his or her residual functional capacity) and his or her vocational capabilities (age, education, and past work experience) to adjust to a new job. See 20 C.F.R. § 404.1520; Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981). The applicant bears the

burden of proof during the first four steps of the inquiry, while the burden shifts to the Commissioner for the final step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)). "If an applicant's claim fails at any step of the [sequential evaluation] process, the ALJ need not advance to the subsequent steps." Id. (citing Hunter, 993 F.2d at 35).

To determine whether Jenkins was disabled from his alleged onset date of January 22, 2011 until the March 31, 2012, Jenkins's DLI, the ALJ employed the statutorily required five-step evaluation process. At step one, the ALJ found that Jenkins did not engage in substantial gainful employment during the period between his alleged onset date and his DIL. Tr. 346. At step two, the ALJ determined that Jenkins suffered from the severe impairments of degenerative disc disease, hypertension, and a history of cerebrovascular accident. Id. At step three, the ALJ found that Jenkins's impairments or combination thereof did not meet or medically equal one of the impairments listed in the Agency's Listing of Impairments. Tr. 348. Before reaching the fourth step, the ALJ determined that Jenkins retained the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR [§] 404.1567(b)." Tr. 349. Therefore, at the fourth step, the ALJ found that Jenkins, through his DLI, "was capable of performing past relevant work as a car salesman." Tr. 352. As such, the ALJ concluded that Jenkins was not disabled under the meaning of the Social Security Act during the period at issue. Tr. 353.

## II.  STANDARD

This court is charged with conducting a de novo review of any portion of the Magistrate Judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of

5

the Magistrate Judge. See Thomas v. Arn, 474 U.S. 140, 149-50 (1985). The recommendation of the Magistrate Judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id. Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]," not on the reviewing court. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citation omitted).

Although the district court's role is limited, "it does not follow . . . that the findings of the administrative agency are to be mechanically accepted. The statutorily granted review contemplates more than an uncritical rubber stamping of the administrative action." Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969). Further, although the court will not reweigh the evidence considered, the Commissioner's findings of fact are not binding where they are based on an improper legal standard. Coffman v. Bowen, 829 F.2d 514, 519 (4th Cir. 1987).

## III. DISCUSSION

Before considering the merits of Jenkins's objection, the court finds it useful to define the scope of the court's inquiry, which is particularly narrow in this case. Jenkins alleges a disability onset date of January 22, 2011. Jenkins's DLI, beyond which Jenkins is not entitled to any benefits under the Act, is March 31, 2012. Therefore, the Commissioner's inquiry is whether Jenkins was disabled under the Act at some point during the fifteen-month period between January 22, 2011 and March 31, 2012. Jenkins has submitted medical evidence from testing and appointments that took place after his DLI that he claims provide support for both his claim for DIB and the opinion of his treating physician. While the law in this circuit is clear that such evidence is admissible, the ALJ is required to consider post-DLI evidence only to the extent that it reflects the existence of a disability during the relevant period. See Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340–41 (4th Cir. 2012) ("Medical evaluations made after a claimant's insured status has expired . . . may be relevant to prove a disability arising before the claimant's DLI" where "that evidence permits an inference of linkage with the claimant's pre–DLI condition."). In this case, the relevant time period is from January 22, 2011 to March 31, 2012. Therefore, in reviewing the decision of the ALJ, the court will consider the post-DLI evidence only to the extent that it has a bearing on whether Jenkins was disabled within the relevant time period.

In his sole objection to the R&R, Jenkins contends that the ALJ erred in according "little weight" to the opinion of Dr. Jones, Jenkins's treating physician. Specifically, Jenkins argues that the ALJ erred in two alternative ways. First, he argues that the treating physician rule mandates that the ALJ give Dr. Jones's opinion controlling

weight. Alternatively, he argues, even if the ALJ did not err in failing to accord Dr. Jones's opinion controlling weight, the ALJ had a legally insufficient basis to accord the opinion little weight. In response, the Commissioner argues that the ALJ's decision is consistent with the treating physician rule and the standards of the Act. Because the ALJ's assignment of little weight to Dr. Jones's opinion is not violative of the treating physician rule and is supported by substantial evidence, the court adopts the R&R and affirms the decision of the Commissioner.

### A. Treating Physician Rule

First, Jenkins argues that the ALJ's failure to give Dr. Jones's opinion controlling weight was violative of the treating physician rule. Under the "treating physician rule," the opinion of a claimant's treating physician is generally entitled to significant weight in the determination of disability. See Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). In fact, the regulations demand that a medical opinion from a treating source be afforded "controlling weight" where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). The Fourth Circuit has noted the treating physician rule's good sense:

> treating physicians are given more weight . . . since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone[].

8

Lewis v. Berryhill, 858 F.3d 858, 867 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted).

Nearly a year after Jenkins's DLI, on March 21, 2013, Dr. Jones filled out a "yes" or "no" checkbox questionnaire, in which he responded "yes" to: (1) whether Jenkins would need to take breaks on an unpredictable and unscheduled basis in order to complete a normal 8-hour workday, (2) whether Jenkins should be limited to a sedentary job, (3) whether his opinion is consistent with the objective medical findings from his test and evaluations, and (4) whether Jenkins's functional limitations as outlined in the other questions existed prior to March 31, 2012.[2] Dr. Jones examined Jenkins on three occasions prior to rendering his opinion.

The ALJ did not afford the opinion of Dr. Jones controlling weight in his determination of Jenkins's residual functional capacity. The ALJ explained that the opinion was unsupported by the medical evidence and that the evidence Jenkins presented did not support Dr. Jones's opinion. See Tr. 352. Jenkins argues that the evidence in the record supports Dr. Jones opinion and thus the ALJ was bound to afford it controlling weight. Specifically, Jenkins argues that evidence related to Dr. Jones's April 2, 2012 and March 8, 2013 examinations of Jenkins provides support for his opinion.

With respect to the April 2, 2012 examination, treatment notes reveal that Jenkins tested positive for a limited range of motion in his lower back with muscle spasms. The ALJ did consider evidence of Dr. Jones's April 2, 2012 examination of Jenkins and found that it did not provide support for his opinion:

---

[2] The questionnaire also included a question that asked Dr. Jones to check the box that corresponded with the amount of time that Jenkins would absent from his job due to his functional limitations. Dr. Jones left this question blank.

9

> Dr. Jones' treatment notes of record prior to the date of the opinion did not show more than a limited range of motion, back pain and spasms, as well as hypertension treated with medications. Such evidence does not indicate any debilitating symptoms that would support the extensive restrictions noted by Dr. Jones.

Tr. 352.

The ALJ's finding that evidence from the April 2, 2012 evaluation did not support Dr. Jones's opinion is supported by substantial evidence. First, Dr. Jones's treatment notes from the April 2, 2012 evaluation do not cite any objective medical evidence consistent with Dr. Jones's 2013 opinion. Second, Dr. Jones's treatment notes themselves are inconsistent with his 2013 opinion. Dr. Jones wrote in his treatment notes that the "patient voices no concerns except for occ[asional] pain in the lower back." Tr. 310. It is hard to reconcile that note with Dr. Jones's year-later opinion that Jenkins's functional limitations prohibited him from long periods of work and necessitated frequent rest. Indeed, treatment notes from the April 2, 2012 examination are particularly indicative of Jenkins's pre-DLI condition because the examination took place just two days after Jenkins's DLI. Third, Jenkins does not point the court to any clinical evidence prior to his DLI that supports Dr. Jones's 2013 opinion. Therefore, the ALJ's determination that Dr. Jones's opinion was not adequately supported by clinical evidence is supported by substantial evidence. Thus, the ALJ's decision not to afford Dr. Jones's opinion controlling weight is valid. See Craig v. Chater, 76 F.3d at 590) (". . . if a physician's opinion is not supported by clinical evidence . . . it should be accorded significantly less weight.").

Further, Jenkins argues that the ALJ's decision was violative of the treating physician rule in the face of Dr. Jones's March 8, 2013 examination and the results from

x-rays Dr. Jones ordered based on that examination. As an initial matter, the court notes that this examination of Jenkins took place almost a year after Jenkins's DLI. While the ALJ was required to consider such post-DLI evidence, he was merely required to consider it to the extent that it was reflective of the relevant period, that is, before March 31, 2012. With respect to the March 8 examination and x-ray evidence, the ALJ stated:

> Although the claimant submitted evidence of a lumbar MRI indicating moderate to severe findings, the MRI findings and the subsequent treatment notes discussing such findings are chronologically distant from the claimant's date last insured. Therefore, the undersigned finds such evidence has limited probative value on the severity of the claimant's back impairment during the period in question from the claimant's alleged onset date through his date last insured.

Tr. 351.

The court finds that the ALJ's determination is supported by the substantial evidence. To be sure, the lumbar MRI findings would provide clinical support for an opinion that Jenkins was disabled at the time the x-rays were administered. The court's inquiry here, however, is whether the 2013 x-ray evidence provides support for Dr. Jones's 2013 opinion that Jenkins was disabled in 2012. As the ALJ noted, both Dr. Jones's opinion and the x-ray evidence supporting his opinion are one year removed from the relevant period. The court cannot conclude that this one-year gap between the relevant period and the evidence supporting Dr. Jones's opinion is insignificant. Therefore, the chronological gap between Jenkins's DLI and the evidence supporting Dr. Jones's opinion provided the ALJ with a legally sufficient basis to find that Dr. Jones's opinion was unsupported by clinical evidence. As such, the court concludes that the ALJ's decision not to afford Dr. Jones's opinion controlling weight did not violate the treating physician rule and is supported by substantial evidence.

### B. Section 404.1527(c) Factors

Next, Jenkins argues that the ALJ did not have an adequate evidentiary basis to accord little weight to Dr. Jones's opinion. Even where an ALJ properly declines to afford the opinion of a treating physician controlling weight, he or she still must apply several factors to determine the weight the opinion should be afforded. 20 C.F.R. § 404.1527(c)(2). Those factors are: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, that is, the extent to which it is consistent with medical signs and laboratory findings, (4) the consistency of the opinions, if there are multiple, (5) whether the treating physician is a specialist, and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)–(6). The ALJ must give "good reasons" in the decision for his or her assignment of weight to a treating source's opinion, 20 C.F.R. §§ 404.1527(c)(2), meaning that the decision

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2P.

The court finds that the ALJ's evaluation of Dr. Jones's opinion is supported by substantial evidence. In his decision, the ALJ noted that "Dr. Jones only treated the claimant on three occasions prior to the date of his opinion." Tr. 352. The brevity of Jenkins's treatment relationship with Dr. Jones clearly weighs in favor of the ALJ's assignment of little weight. Jenkins argues, however, that the ALJ "did not discuss [Jenkins's] testimony regarding his financial ability to obtain medical care." ECF No. 30

at 2. Jenkins notes that the 2016 R&R instructed the ALJ on remand to consider the resources available to Jenkins in his analysis of Jenkins and Dr. Jones's treatment relationship. Indeed, the Fourth Circuit has found that "[a] claimant may not be penalized for failing to seek treatment she cannot afford." Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986).

In Lovejoy, the Fourth Circuit held that a claimant's allegations of pain and subjective symptoms could not be discredited based on her financial inability to seek treatment. That case did not hold, and the court is unaware of any case that has held, that an ALJ may not consider the limited nature of a treatment relationship in his or her evaluation of a treating physician's opinion because a claimant cannot afford treatment. In fact, the first two factors listed in the regulations specifically mandate the ALJ to consider the treatment relationship between a claimant and treating physician. While the court understands the importance of considering a claimant's financial ability to seek treatment, it can think of no way to effectively evaluate the opinion of a treating physician without at least some consideration of the length, nature, and extent of the treatment relationship. Therefore, the court will not stretch the doctrine espoused in Lovejoy so far as to nullify an ALJ's consideration of a claimant's treatment relationship with his physician in assigning the weight to the opinion of that treating physician.

In his decision, the ALJ stated that "[w]hile [he] acknowledges the claimant suffered from a lack of finances for medical treatment, the record still shows a very brief treating relationship with Dr. Jones prior to the date of his opinion." Tr. 352. To be sure, the ALJ's statement hardly provides the court with a clear picture of Jenkins's ability to obtain medical care or the effect of the economic realities on his treatment relationship

with Dr. Jones.  However, the regulations mandate that the ALJ consider the treatment relationship in his or her evaluation of treating physician's opinion and the court is without a sufficient legal basis to discredit that analysis.  Therefore, the court finds that the ALJ properly considered the brevity of the treatment relationship between Jenkins and Dr. Jones, which supports his evaluation of Dr. Jones's opinion.

Further, the ALJ considered a number of other factors in assigning Dr. Jones's opinion little weight.  Discussed above, the ALJ considered the fact that Dr. Jones's opinion was not well-supported by clinical evidence.  Further, the ALJ noted that Dr. Jones is not a specialist.  See Tr. 352 (". . . as a general practitioner, Dr. Jones was not a cardiovascular, neurological, or orthopedic specialist. . .").  Additionally, also discussed above, the ALJ considered the one-year time gap between Jenkins's DLI and Dr. Jones's opinion.  Therefore, the court finds that the ALJ had "good reasons" for his assignment of little weight, which is supported by substantial evidence.  As such, the court overrules Jenkins's objection, adopts the R&R, and affirms the decision of the Commissioner.

## IV. CONCLUSION

For the foregoing reasons the court **ADOPTS** the R&R and **AFFIRMS** the final decision of the Commissioner.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**April 1, 2020**
**Charleston, South Carolina**